**Phyllis HOWARD as Guardian Ad Litem for Timothy Groves, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. C–C–90–172–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

March 7, 1991.

George L. Fitzgerald, Charlotte, N.C., for plaintiff.

James Sullivan, Asst. U.S. Atty., Charlotte, N.C., for defendant.

MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on a Memorandum and Recommendation ("M & R"), filed December 19, 1990, by United

States Magistrate Paul B. Taylor. Defendant, on January 4, 1991, filed timely objections to the recommendation from Magistrate Taylor that this matter be remanded to Louis W. Sullivan, Secretary of Health and Human Services ("Secretary").

This case involves a claim filed by Plaintiff on behalf of her son on January 25, 1989 for Social Security benefits through the account of the wage earner Timothy Harding, the natural father of the claimant Timothy Groves.[1] Through the administrative process, the claim was denied. That decision was later affirmed after a hearing was conducted before an Administrative Law Judge (ALJ).

On June 6, 1990, Plaintiff filed this action. Consistent with the Court's standard practice, this matter was referred to Magistrate Taylor. Defendant and Plaintiff filed on August 20, 1990 and October 24, 1990 cross-motions for summary judgment. As indicated above, an M & R was issued on December 19, 1990. In the M & R, Magistrate Taylor recommended that the matter be remanded for the Secretary to consider the claim pursuant to the standard of review enunciated in the case of *Jones v. Harris*, 629 F.2d 334 (4th Cir.1980). Thereafter, Defendant filed its objection to that recommendation.

Title 28, United States Code, Section 636(b) permits the Court to designate a magistrate to conduct hearings and to submit to the Court proposed findings of fact and recommendations for the disposition by the Court of any motion for summary judgment or to dismiss a complaint. The magistrate is required to file his proposed findings and recommendations with the Court. Within ten (10) days after being served with a copy, any party may file written objections to the proposed findings and recommendations. The Court must then make a de novo determination of those portions of the proposed findings or recommendations to which objection is made. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The Court may also receive further evidence or recommit the matter to the magistrate with instructions.

In conducting its de novo review, the Court has carefully considered the entire record in this matter. In particular, the Court has considered the applicable law. In addition, the Court has reviewed the transcript from the hearing conducted by the ALJ and reviewed the entire record from the administrative hearing. The Court has carefully considered the objections made by Defendant. Because the Court believes that the ALJ did apply the standard from the *Jones v. Harris* case, the Court concludes that it was erroneous for the Magistrate to recommend that this matter be remanded to the Secretary. For the reasons stated below, the Court will reverse the M & R and order that this matter be dismissed.

In order for Plaintiff to recover benefits on behalf of Timothy Groves, it must be shown that the "insured individual (Harding) by evidence satisfactory to the Secretary (was) the ... father of the applicant (Timothy Groves), and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died." *See* 42 U.S.C. § 416(h)(3)(C)(ii). There is no dispute that Harding was the father of Timothy Groves. Likewise, it is undisputed that Harding was not living with Timothy Groves at the time of Harding's death. Accordingly, the only issue in dispute is whether Harding was contributing to the support of Timothy Groves at the time of Harding's death.

■ The Fourth Circuit Court of Appeals has enunciated a test for determining whether an insured made contributions to his child for purposes of § 416(h)(3)(C)(ii). In *Jones v. Harris*, 629 F.2d at 336, the court indicated that the test properly to be applied is whether contributions regular

1. The undisputed evidence indicates that Timothy Groves was conceived in 1980 when Timothy Harding was estranged from his wife (the mother of several of his children) and living with Phyllis Howard. Shortly before Timothy Groves was born, Harding ceased living with Howard and returned to his wife. In 1986, Harding lived with Howard and Timothy Groves for a period of four (4) weeks. In 1988, Harding was shot and killed by his daughter.

and substantial in relation to the wage earner's income and the child's needs were made. *Id.* The court felt that the purposes of Act would be defeated if small, regular contributions to a poor family would not be considered. *Id.* Nonetheless, the burden of proof remains with the claimant to establish the critical elements of the test. The wage earner in the *Jones v. Harris* case contributed $30.00 per month over the course of one year to an impoverished family. Because these regular contributions were not taken into account, the Fourth Circuit remanded the case to the district court.

■ In the case at hand, Plaintiff introduced evidence that indicated Harding on one occasion sent a money order in the amount of $45.00 or $50.00 to his sister to give to Plaintiff for the benefit of Timothy Groves. *See M & R* at 5. On another occasion, Harding apparently gave Plaintiff an undisclosed amount of money for the purchase of school clothes for Timothy Groves. *Id.* Finally, Harding allegedly provided Plaintiff with $1,000.00 from a worker's compensation settlement award for the benefit of Timothy Groves. Evidence of Harding's total lifetime income of $18,612.35 was also introduced. *Id.* Defendant introduced evidence that indicated that Harding dodged representatives of the welfare department that were attempting to locate him in order to require him to made monetary support payments for his son. This evidence coupled with the finding by the ALJ that the contributions by Harding were minimal and made at irregular intervals resulted in the ALJ concluding that the claimant had not carried her burden in establishing the provision of § 416(h)(3)(C)(ii). Therefore, the claim was denied.

The Magistrate found that the ultimate issue was whether or not the deceased was the child's father and responsible for his support. *Id.* at 6. Thus, the Magistrate found it irrelevant that Harding had dodged welfare authorities. Moreover, the Magistrate found that the ALJ had dismissed the significance of Harding's contributions; thus, failing to apply the *Jones v. Harris* test. Therefore, the Magistrate concluded that the ALJ made the decision to deny the claim based on the fact that Harding did not cooperate with the welfare authorities. Thus, the Magistrate recommended that this matter be remanded in order for the Secretary to apply the *Jones v. Harris* test.

After its review of the ALJ's written decision, the Court is convinced that the ALJ did not apply the wrong test. The ALJ stated at page 11 of the Administrative Record:

[T]he undersigned is persuaded that the claimant was not contributing to the support of the child at the time of his death. Since the claimant only provided money for the benefit of the child on two or three occasions in eight years time, he clearly was not providing substantial and regular support payments. The undersigned acknowledges that the courts have held that contributions must be evaluated in light of the financial circumstances of the parties and the proper test is whether contributions were commensurate with the child's needs (*Jordan v. Heckler*) (citation omitted).[2] Thus, if the father did what he could to support his children, the courts have found that those children were entitled to benefits. However, in the instant case, the claimant's mother has testified that Mr. Harding not only contributed only sporadical-

2. During the hearing of this matter, counsel for Plaintiff explained the applicable test to the ALJ. · Counsel for Plaintiff cited case law standing for the proposition that the dollar amount of the contribution is not controlling, but whether the contribution is commensurate with the economic abilities of the contributor. *See* Administrative Record at 28. Moreover, Plaintiff's counsel provided copies of the applicable law to the ALJ. *Id.* at 58. The *Jordan v. Heckler* case was one of the cases listed.

Both the Magistrate and Plaintiff's counsel criticized the ALJ for citing the *Jordan v. Heckler* case instead of *Jones v. Harris.* However, it appears to the Court that the ALJ relied on this case based in part on Plaintiff's counsel representations. Moreover, it appears to the Court that the case appears to be substantially similar to the *Jones v. Harris* case. Thus, the ALJ was able to apply the *Jones v. Harris* test while relying on the *Jordan v. Heckler* case.

ly to the claimant but aggressively tried to avoid support payments by "running" when the welfare department would learn of his whereabouts. These actions clearly establish that the claimant was not contributing to the support of the claimant, within the meaning of the Act, at the time of his death.

By the clear and unambiguous language used by the ALJ, the Court believes that the ALJ found that Harding did not make *regular* contributions to the child. Moreover, the ALJ indicated that case law required him to consider whether the contributions were commensurate with the child's needs and Harding's economic circumstances. Thus, the Court believes the Magistrate was incorrect in concluding that the ALJ failed to apply the correct test. Because Harding made only sporadic payments (two or three times) over a period of eight (8) years, the ALJ concluded that Harding failed to support the claimant within the meaning of the Act.

The Court believes that this was a reasonable and legally correct determination. The Fourth Circuit in *Jones v. Harris* did not eliminate the regularity requirement in determining whether the provisions of the Act are met. Instead, the court stated that the contributions must be *"regular* and substantial"*, and that "the loss of small, *regular* contributions to a poor family would cause the economic dislocation the Act seeks to prevent". *See Jones v. Harris*, 629 F.2d at 336. The wage earner in *Jones v. Harris* made regular bi-monthly contributions over a period of one year. The wage earner in this case at best made three (3) contributions over an eight (8) year period of time. The Court simply cannot characterize such contributions, despite Harding's lack of income, as regular. Accordingly, the Court agrees with the ALJ that the contributions were not regular as required by the Act, and the test enunciated in *Jones v. Harris*.

NOW, THEREFORE, IT IS ORDERED that the M & R be, and hereby is, REVERSED AND REJECTED. Defendant's motion for summary judgment is hereby GRANTED, and this matter is DISMISSED WITH PREJUDICE.