955 F.2d 41
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Phyllis HOWARD, as Guardian Ad Litem for Timothy GROVES,
Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 91-1730.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1991.
Decided Feb. 20, 1992.
As Amended March 5, 1992.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CA-90-172-C-C-P)
 Argued: George L. Fitzgerald, Charlotte, N.C., for appellant; Clifford C. Marshall, Assistant United States Attorney, Asheville, N.C., for appellee.
 On Brief: Thomas J. Ashcraft, United States Attorney, James M. Sullivan, Assistant United States Attorney, Charlotte, N.C., for appellee.
 W.D.N.C., 758 F.Supp. 339.
 AFFIRMED.
 Before K.K. HALL, WILKINS and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The Secretary of Health and Human Services denied child's insurance benefits under the Social Security Act to Phyllis Howard as guardian for Timothy Shane Groves (whom all call Shane), which were claimed by reason of the death of Shane's reputed father. The Secretary determined that at the time of death Shane's father did not provide Shane, an illegitimate son, with such support that would entitle him to benefits. Although we would welcome evidence to further the interests of Shane, who was left with little means of support, the record amply supports the conclusion that Shane's reputed father was providing no meaningful support for Shane at the time of his death in October 1988. When applying the standard given to us by statute, that the decision of the Secretary is conclusive on the issue when supported by substantial evidence, we must affirm.
 
 
 2
 * On January 25, 1989, Phyllis Howard filed a claim with the Social Security Administration for child's insurance benefits for Shane, her eight-year-old son. The claim was made on the occasion of the death of Timothy Harding, Shane's reputed father and a wage earner under the Social Security Act, who was shot by his daughter on October 27, 1988.
 
 
 3
 Phyllis Howard claims that she became pregnant with Shane when Timothy Harding lived with her during a year-long period in 1979-80, but that Harding left her before Shane was born in August 1980 to return to his wife and three children. Shane's birth certificate produced by Phyllis Howard provides no identification of Shane's father. Timothy Harding never married Phyllis Howard and lived with her on only two occasions, once for the year-period before Shane's birth, and once for a four-week period during the summer of 1986. Over the years Harding worked sporadically in a machine shop or laying carpet and reported insignificant earnings to the Social Security Administration. While he reported something over $2,000 in 1980 and over $1,000 in each 1982 and 1986, he reported no earnings for the years 1984, 1985, 1987 and 1988.
 
 
 4
 Harding, who remained married to the mother of his three children from that marriage, never acknowledged in writing that Shane was his son, but he is reported to have acknowledged that fact orally. His record of support for Shane is a short one. In 1986 when he lived with Phyllis Howard for about four weeks, he gave her $1,000 to use for Shane's benefit and his sister $225 to purchase clothes for Shane. This money is reported to have come from a settlement of a worker's compensation claim. For the eight years from Shane's birth, in August 1980, until Timothy Harding's death in October 1988, Harding provided no other support to Shane. There was evidence that on one occasion in 1984 or 1985 he sent a money order for Shane to his sister in the amount of $45 or $50 but that money never reached Shane or his mother because it was lost in a fire. Phyllis Howard testified that when she sought welfare payments from Harding, "they [state welfare personnel] tracked him down a few times" and "when they [would] get close to him he would quit--quit a job" and move on. "[T]hey couldn't catch up with him."
 
 
 5
 On this record, the administrative law judge concluded that Harding was not contributing to the support of Shane at the time of Harding's death.
 
 
 6
 Since the claimant only provided money for the benefit of the child on two or three occasions in eight year's time, he clearly was not providing substantial and regular support payments.
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 [T]he claimant's mother has testified that Mr. Harding not only contributed only sporadically to the claimant but aggressively tried to avoid support payments by "running" when the welfare department would learn of his whereabouts. These actions clearly establish that the claimant was not contributing to the support of the claimant, within the meaning of the Act, at the time of his death.
 
 
 10
 When the Appeals Council denied Howard's request for review, suit was filed in the district court to review the Secretary's decision, and the district court affirmed. Recognizing that the ALJ did not acknowledge our controlling decision in Jones v. Harris, 629 F.2d 334 (4th Cir.1980), the district court concluded nevertheless that the ALJ conducted the analysis required. As the court said:
 
 
 11
 By the clear and unambiguous language used by the ALJ, the Court believes that the ALJ found that Harding did not make regular contributions to the child. Moreover, the ALJ indicated that case law required him to consider whether the contributions were commensurate with the child's needs and Harding's economic circumstances.
 
 II
 
 12
 The applicable provision of the Social Security Act provides that dependent children, even though not living with a wage-earning parent, may nevertheless receive child's benefits on the death of the parent if the parent was "contributing to the support" of the child at the time of the parents' death. 42 U.S.C. § 416(h)(3)(C)(ii). Under 20 C.F.R. § 404.366(a) contributions for support "must be made regularly and must be large enough to meet an important part of [the child's] ordinary living costs.... If the insured person only provides gifts or donations once in a while for special purposes, they will not be considered contributions for [the child's] support." It is clear from our decision in Jones, however, that the frequency and amount of contributions necessary for a finding of dependency is relative "to the wage earner's income and the child's needs." Jones, 629 F.2d at 336. We noted that the intended purpose of the act is to provide benefits when the child's loss was substantial, not when measured by some absolute or abstract standard, but by the actual economic dislocation suffered by the child on the wage earner's death. Id.
 
 
 13
 Ordinarily, therefore, to resolve whether the contributions were regular and substantial in relation to the wage earner's income and the child's needs, the factfinder must review the economic circumstances of the wage earner and the child in order to evaluate whether the contributions were substantial. While that was not expressly done in this case, because of the facts found, which we cannot disturb if supported by substantial evidence, we conclude that the judgment of the Secretary and the district court was nevertheless correct.
 
 
 14
 At the time of Harding's death and for two years earlier, Harding made no contributions to the support of Shane. Moreover, during the course of eight years, from the time that Shane was born until Harding died, Harding made one substantial gift in the amount of $1,225, (paying $1000 to Shane's mother and $225 to his sister). While there is evidence that on one other occasion in 1984 or 1985 Harding gave $50 to his sister for Shane, that money never reached Shane or his mother. Most telling in this case is the fact that Harding demonstrated no interest in providing regular support to Shane. On the contrary, when Phyllis Howard pursued Harding in an effort to obtain support, he ran. These circumstances are distinguishable from those in Jones where it was shown by the testimony of several people that the deceased wage earner gave the illegitimate child "approximately $15 twice a month" on a regular basis and is reported to have denied money to his mother in order to save for support of the child. Jones, 629 F.2d at 335.
 
 
 15
 The findings by the ALJ in this case are amply supported by the record and are essentially not disputed on appeal. We conclude that these findings support the conclusion that the one time contribution of $1,225, with perhaps another of $50 over an eight-year period, while possibly substantial, cannot be considered regular. Indeed, in light of the absence of any payment by Harding for the two years preceding his death and the testimony relating to Harding's attempt to avoid making payments, the Secretary's conclusion that no support was being provided to Shane "at the time such insured individual died," see 42 U.S.C. § 416(h)(3)(C)(ii), is substantially supported by the evidence.
 
 
 16
 Accordingly the judgment of the district court, which affirms the Secretary, is hereby affirmed.
 
 
 17
 AFFIRMED.